(33 Misc. Rep. 409.)

### LYMAN, Commissioner, v. OUSSANI et al.

(Supreme Court, Trial Term, New York County. December, 1900.)

**1. INTOXICATING LIQUORS—ACTION ON BOND—SPECIAL STATE AGENTS—TESTI-MONY—NEW TRIAL.**

Liquor Tax Law, § 10, provides that it shall be the duty of the state commissioner of excise to investigate all matters in relation to the compliance with law by persons engaged in traffic in liquor, and to investigate any other matter in connection with the sale of liquor. *Held*, that the fact that a judgment was rendered on defendant's bond on the testimony of special agents of the state commissioner of excise, who had purchased liquor at defendant's saloon during prohibited hours for the purpose of testifying against her, but without offering any special inducements for her to serve the liquor, constituted no grounds for new trial, since the special agents were authorized to make such an investigation for the purpose of enforcing the law.

**2. SAME—SPECIAL STATE AGENTS—COMPETENCY AS WITNESSES.**

Under Liquor Tax Law, § 31, prohibiting the sale of liquor during certain hours, the fact that special agents of the state purchased liquor of defendant during those hours did not make them participants in defendant's wrong, so as to render them incompetent as witnesses in an action to recover a penalty on defendant's bond, since the act does not prohibit the purchase, but only the sale, of liquors.

Action by Henry H. Lyman, as state commissioner of excise, against Margaret A. Oussani and another, to recover a penalty on a bond given in pursuance of the liquor law. Judgment for plaintiff. Motion for new trial on the minutes. Motion denied.

Royal R. Scott (Mead & Stranahan, of counsel), for plaintiff.
Charles G. F. Wahle, for defendant Oussani.
Charles C. Nadal, for defendant Fidelity & Casualty Co.

BLANCHARD, J. This is a motion for a new trial on the minutes. The action was brought by Henry H. Lyman, as state commissioner of excise of the state of New York, against Margaret A. Oussani and the Fidelity & Casualty Company of New York, to recover a penalty of a bond given in pursuance of the liquor tax law. It appears that on or about the 10th day of April, 1899, the defendant Oussani applied to the deputy commissioner of excise for the boroughs of Manhattan and the Bronx for a liquor tax certificate to traffic in liquor at Nos. 32 and 34 West Twenty-Ninth street, in Manhattan borough, New York City. Before granting the certificate, the deputy commissioner exacted the bond required by law. Thereupon these defendants, the said Oussani as principal, and the said company as surety, made and delivered to him their bond in the penal sum of $1,600, conditioned in part that the principal, the said Oussani, "will not violate any of the provisions of the liquor tax law, or any act amendatory thereof or supplementary thereto, and the said principal will pay all fines and penalties incurred or imposed for violation of the liquor tax law, and any judgment or judgments recovered or entered against the said principal for or on account of such violation of said law, together with all costs taxed or allowed in any action or proceeding brought or instituted under the provisions of said liquor tax law."

Under the certificate thus issued, the defendant Oussani was not permitted to sell liquor between the hours of 1 and 5 o'clock in the morning, and it was alleged that she did sell or permit it to be sold between those hours under such certificate, and thereby violated one of the provisions of the liquor tax law and the terms of the bond in question. Other violations of the law were alleged or suggested, and some testimony was received concerning them, but they were finally taken from the consideration of the jury, and the single question of fact submitted to the jury was whether or not the defendant Oussani, her servants or agents, sold liquor at Nos. 32 and 34 West Twenty-Ninth street, between the hours of 1 and 5 o'clock in the morning of February 22, or February 27, 1900. The jury brought in a verdict in favor of plaintiff for $1,670.93. It appears from the evidence in the case that the persons to whom the said Margaret A. Oussani, the principal in the bond, sold the liquor in violation of the liquor tax law, were the duly-appointed special agents of the excise department of the state, and that they went to the place in question by the direction of the department, and remained there until after 1 o'clock. They asked the waiters in attendance, who were employés of the principal in the bond, for liquor of various kinds. The waiters served the liquors thus ordered, and the special agents paid for them, and the money used for that purpose was reimbursed by the department to the agents as an authorized expense. In going to the defendant Oussani's place on the night in question, these agents acted in pursuance and under the instructions of the excise department of the state.

At the close of the plaintiff's case the learned counsel for the defendants moved the dismissal of the complaint on three grounds, two of which were finally resolved in favor of the defendants, and decision was reserved on the third. It is as follows: "As to the allegation that the defendant Oussani was guilty of selling liquor after 1 o'clock a. m. on the 22d or 27th of February, 1900, on the ground that the sales of liquor alleged to have been made on the said days were invited, procured, and induced to be made by the special agents and representatives of the plaintiff in this action at the instance, instruction, and request of the said plaintiff." No case in this state decisive of the precise point here involved has been brought to my attention, nor have I been able to find one, except the case of Commissioners v. Backus, 29 How. Prac. 33, which is much in point. That was an action to recover the penalty for a violation of the excise law of 1857, and it was held that the employment of paid informers in detecting such violation did not prevent a recovery. In People v. Smith, 28 Hun, 626, it was held, however, that the purchaser of liquor was not an accomplice of the seller, within the meaning of the criminal law. In Rhode Island the principal and his sureties were held liable on their bond for unlawfully selling liquor on Sunday. See Tripp v. Flanigan, 10 R. I. 128. On the other hand, in the case of Mayor, etc., v. Dickerson, 45 N. J. Law, 38, the action was on the city treasurer's bond. The plea of the sureties was that the plaintiff "permitted, encouraged, induced, and was privy to the alleged breach." The city demurred to the pleadings, and it was held that the plea was good, as "it alleges, in substance, that the obligees in the bond intentionally

brought about the breach now complained of. They must therefore be estopped from complaint."

These decisions are not authoritative one way or the other, and we must look to the law itself and construe its provisions. By virtue of the provisions of section 10 of the liquor tax law, the special agents of the plaintiff were authorized to investigate all matters in relation to the compliance with law by persons engaged in the traffic in liquor, and to investigate any other matter in connection with the sale of liquor; and section 38 of the act provides that any officer who shall neglect or refuse to perform his duty under the provisions of the act shall be liable to a penalty of $500 for each and every offense. The methods to be adopted in the course of such investigation are not specially defined or limited by the statute, and it was doubtless the intention of the legislature to leave to the state officials making such investigations the largest discretion and latitude in respect to the methods to be adopted by them therein, provided, of course, that such methods do not interfere with any of the rights of the parties whose acts are under investigation. It therefore seems clear that, in the course of their investigation of the conduct of the defendant Oussani in her business of selling liquor, it was necessary and proper for the special agents of the plaintiff to ascertain what was the particular kind of liquor which she was selling during the prohibited hours, and for that purpose to seek to be served with the liquor which she was offering for sale.

The evidence does not show that those agents offered any special invitation or inducement to the defendant to serve such liquor to them. The transaction was the ordinary one of ordering specified liquors in a liquor saloon, and paying the usual prices for them. There is no evidence that the plaintiff gave any particular instructions or directions to the special agents as to how they should proceed in this particular investigation, or that they were particularly directed by the plaintiff to do anything to induce this defendant to sell liquor to them during the prohibited hours. And, even if the plaintiff had given such particular instructions to the special agents, I should not hold that such directions were improper, nor that the carrying out of such directions made the plaintiff or his special agents participants in the defendant's wrongdoing. The act does not make the purchase of liquor during the prohibited hours an offense, and, while it might be a question of good morals whether one should purchase liquor from one prohibited by the statute from selling the same, that question is not before the court for decision here.

The act (section 31) makes unlawful what otherwise would be lawful, namely, the selling of liquor during a certain interim. As the act does not prohibit the purchase of liquor during that interim, and has not actually limited and abridged the ordinary rights of citizens to traffic freely, and is highly penal in its nature, the court should not presume that it creates any offense not specifically defined in the statute itself.

Nor does it appear that in purchasing said liquor from the defendant Oussani the special agents practiced towards her any coercion,

misrepresentation, fraud, or deceit. She had the option to refuse to sell the liquor. The special agents were, so far as she was concerned, ordinary patrons of her place. They violated no right of the defendant in offering to purchase liquor from her as they did, for she then had no right to sell it. She knowingly, and without any special inducement, did a wrongful act in selling the liquor to the special agents. She took her chances with them, as she might have done in selling to any private citizen on her premises at that time. Certainly the maxim, "Nullus commodum capere potest de injuria sua propria," has no application to such a state of facts.

But, even if it should be conceded that the special agents committed a wrong to the defendant in purchasing liquor from her, the legal principle involved in the maxim would still have no application in this case. The duties of the special deputies or agents are defined by section 10 of the statute. If the buying of liquor from the defendant, as they did, was not legitimately included in their acts of investigation of the sale of liquor by the defendant, or in relation to the compliance with law by her in her business of traffic in liquor, then they were acting without the scope of their authority in so buying, and the state of New York, which is the real plaintiff and party interested in this action, would not be bound by their wrongful act in the absence of proof that they were specially instructed and directed by their superior, the state commissioner of excise, to buy the liquor from the defendant at the time and in the manner disclosed by the evidence. No such proof exists in this case. In this view of the case, the acts of the special agents in so buying from the defendant were not their acts as special agents of the state, but acts done on their own responsibility as private citizens, and the state had the undoubted right to make use of their testimony as to the sale of the liquor to them by the defendant during the prohibited hours in the same manner, subject to the established rule of evidence, as though the said special agents were not in the employ of the state. The motion for a new trial is therefore denied.

Motion denied.